J-S25017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.K., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3635 EDA 2016 |

Appeal from the Order Entered October 25, 2016 In the Court of Common
Pleas of Monroe County Orphans' Court Division at 43 O.C.A. 2016; and
the Order Entered October 17, 2016, In the Court of Common Pleas of
Monroe County Juvenile Court Division at No(s): CP-45-DP-0000009-2015

BEFORE:   BENDER, P.J.E, RANSOM, J. and FORD ELLIOTT, P.J.E.

MEMORANDUM BY RANSOM, J.:                        **FILED APRIL 11, 2017**

K.K. ("Mother") appeals from the order dated October 17, 2016, and

entered on October 25, 2016, terminating her parental rights to her female

child, L.C. ("Child") (born in August of 2010), pursuant to the Adoption Act,

23 Pa.C.S.A. § 2511, and the order dated October 17, 2016 and entered on

that same date changing Child's permanency goal to adoption pursuant to

the Juvenile Act, 42 Pa.C.S.A. § 6351.[1]  We affirm.

The trial court summarized the factual and procedural history of this

matter as follows:

_____

[1] In the same termination order, the trial court terminated the parental
rights of Child's father, P.C. ("Father").  Father has not filed an appeal from
the order terminating his parental rights to Child or the order changing
Child's permanency goal to adoption, nor is he a party to the instant appeal.

Prior to the termination of parental rights hearing, Monroe County Children and Youth Services ("CYS" or "the Agency") had an extensive history with Mother in an effort to reunify her with L.C. The history is marked with periods of drug use, sobriety and relapse, unemployment, and Mother's vagabond living situation.

Specifically, L.C. first came to the attention of CYS in January 2015 when the Agency received a referral that Mother was using heroin and L.C. was living with [C.G.], L.C.'s Maternal Grandmother ("Maternal Grandmother"), who herself had a history of cocaine use. L.C. was residing with Maternal Grandmother because Mother did not have stable housing and at times her whereabouts were unknown. In fact, CYS had a previous case open against Mother, but the Agency was unable to locate her within the 60 days that were allotted for an intake.

On January 28, 2015, CYS showed up unannounced at Maternal Grandmother's home and informed Maternal Grandmother about the referral. Maternal Grandmother denied the allegations and provided a drug screen. She later tested positive for cocaine. Mother was not home to refute the allegations or to provide a drug screen.. Although Mother later denied having a heroin addiction, she admitted to having a problem abusing Percocet.

When confronted about the positive drug test, Maternal Grandmother again denied drug use. There were no other appropriate family resources for L.C. at that time because the Agency was unable to locate Mother or Father. Sadly, Mother left CYS with no choice but to take L.C. away because Mother did not take Maternal Grandmother's text message informing her that the Agency was taking L.C. away seriously.

As a result of the above, emergency protective custody was approved on February 6, 2015. Mother did not attend the Shelter Care Hearing on February 10, 2015 where protective custody was continued. L.C. was found dependent following a February 18, 2015 hearing. She has remained dependent and in care ever since.

\*     \*     \*

As of the first review hearing on June 1, 2015, Mother had made strides toward reunification. Specifically, she was attending drug and alcohol treatment and providing drug screens to CYS. She

was also receiving mental health counseling for her generalized anxiety disorder and major depressive disorder. In addition, Mother completed a parenting course with Catholic Social Services and attended regularly scheduled supervised visits with L.C. As a result of her progress, L.C. moved from foster care to live with Mother in a kinship home - the home of the paternal grandmother of Mother's other child.

Unfortunately, Mother's efforts toward reunification with L.C. were short-lived. In October 2015, Mother was unsuccessfully discharged from her drug and alcohol counseling for continuously missing her meetings. On November, 17, 2015, L.C. was removed from Mother's care and placed in foster care because Mother tested positive for heroin and did not re-engage in counseling. CYS also obtained records from Mother's doctor on November 19, 2015 that showed Mother tested positive for opiates, oxycodone, suboxone, and marijuana. In addition, Mother admitted to her doctor that she relapsed on opiates.

After L.C. was removed from Mother's care, Mother elected to be combative with CYS rather than work towards reunification. In December 2015, Mother refused to submit to drug screens or sign service and permanency plans. As part of her service plan, Mother was to submit to three drug screens per week. Mother submitted to only four or five drug screens between November 2015 and September 2016, and has not provided a screen since April 2016. To alleviate the issue of Mother's lack of transportation, CYS sent a social service aide to where Mother was living once a week to obtain a drug screen. However, this service stopped when Mother was consistently not home to provide a screen.

Mother claimed she did not provide drug tests to CYS because she did not trust the Agency. In order to work with Mother, CYS informed Mother that she could provide drug screens to her doctor and CYS would honor those results. Mother did not take advantage of the offer. In fact, Mother withdrew her consent to allow her doctor to provide medical information to CYS because her doctor informed CYS that Mother tested positive for amphetamines.

Mother also failed to make progress in other goal areas. After re-engaging in drug and alcohol treatment, Mother was in April of 2016 unsuccessfully discharged a second time for failure to attend appointments. She was discharged from her mental

health counseling for the same reason. In July 2016, Mother's doctor recommended that Mother go to detox because he could no longer prescribe Suboxone due to evidence of continued substance abuse. As of the date the TPR petition was filed, Mother had not resumed any type of behavioral health treatment.

Similarly, as of the date of the TPR hearing, Mother did not have stable housing, another plan goal. In fact, during the pendency of the underlying dependency action, Mother's housing situation changed at least seven times. Since the beginning of the Agency's involvement, Mother or Maternal Grandmother informed CYS that Mother was bouncing back and forth between living at Maternal Grandmother's home, a motel, and the home of her boyfriend's mother. On September 1, 2016, Maternal Grandmother informed CYS that Mother would be finding her own place and had not spoken to Mother in days. Nonetheless, at the September 19, 2016 review hearing, Mother astonishingly testified that she has lived only at Maternal Grandmother's house for the past ten years.

* * *

In December 2015, L.C.'s maternal uncle, [F.G.] ("Maternal Uncle"), contacted CYS expressing his desire to be a resource for L.C. Since Maternal Uncle and his wife, [T.G.] ("Maternal Aunt"), live in New York, they completed the necessary paperwork for the Interstate Adoption and Interstate Compact on Placement of Children ("ICPC"). Throughout the ICPC process, Maternal Uncle maintained constant contact with CYS to inquire about the status of his ICPC and re -affirm his desire to be a permanent resource for L.C. Maternal Aunt and Uncle attended a family visit to see L.C. at the Agency. In addition, L.C. spent a weekend with Maternal Aunt and Uncle in New York in August 2016. Their ICPC was approved and L.C. moved in with them in September 2016.

* * *

On October 17, 2016, the TPR hearing was held. Mother did not attend. At the beginning of the hearing, Mother's attorney informed us that, on October 14, 2016, Maternal Grandmother had left a message indicating that Mother would not be able to

attend the hearing because she was sick. However, Mother's attorney never heard from Mother and could not verify Maternal Grandmother's message. Similarly, no medical excuse or documentation was submitted. Given the facts and circumstances of this case, the lack of medical documentation, the purpose of the hearing, the fact that Maternal Grandmother did not appear, and Mother's history including her failure to attend some of the hearings in the dependency case, we did not place any credence on the three-day old message left by Maternal Grandmother. Accordingly, we denied the request of Mother's attorney for a continuance. Additionally, we note that Mother did not submit or attempt to submit confirmation of her alleged illness after the hearing, did not file a motion asking us to re -open the record, and did not raise the denial of her attorney's request for a continuance as an issue in this appeal.

After hearing the evidence presented by CYS, and considering the arguments presented by Mother's attorney in Mother's absence, the attorney for the agency and the guardian ad litem, as well as our discussion with L.C. who expressed a desire to continue to live with her Aunt and uncle, we issued an order terminating Mother's parental rights.

Trial Court Opinion, 12/20/16 at 1-8 (citations and footnotes omitted).

On September 1, 2016, the Monroe County Children and Youth Services ("CYS" or "the Agency") filed a petition to involuntarily terminate Mother's parental rights. On October 3, 2016, CYS filed a petition to change the permanency goal for Child to adoption.

On October 17, 2016, the trial court held an evidentiary hearing on the termination and goal change petitions. In an order dated October 17, 2016, and entered on October 25, 2016, the trial court found clear and convincing evidence to terminate Mother's parental rights. In the order dated and entered on October 17, 2016, the trial court changed Child's permanency goal to adoption. On November 16, 2016, Mother timely filed a notice of

appeal with concise statement of errors complained of on appeal pursuant to

Pa.R.A.P 1925(a)(2)(i) and (b).

In her brief on appeal, Mother raises the following issue:

1. Did Children and Youth fail to present clear and convincing evidence that termination of Mother's parental rights served the best interests, emotional needs and welfare of her daughter, L.C., given [M]other's efforts toward reunification, and L.C.'s bond with Mother?

Mother's Brief, at 5.[2]

In reviewing an appeal from a decree terminating parental rights, we

adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***R.I.S.***, [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel Bassett v. Kia Motors America, Inc.***, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, [575 Pa. 647, 654-655],

_____

[2] Mother does not challenge section 2511(a) or the change of permanency goal to adoption in either her concise statement or her statement of questions involved portion of her brief. We, thus, find that she waived the issue. ***See Krebs v. United Refining Company of Pennsylvania***, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal).

838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (*quoting In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section

2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Although Mother waived any challenge to the termination under section 2511(a), in accordance with our caselaw, we will analyze the sufficiency of the evidence under that section to determine whether the termination is warranted.[3] *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008-1009 (Pa. Super. 2008) (*en banc*). We have explained that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *Id.*

We will focus on section 2511(a)(2) and (b), which provides as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

---

[3] We note that Mother raises a challenge to the sufficiency of the evidence within the argument section of her brief, and appears to challenge the termination of her parental rights under section 2511(a)(1), (2), (5), and (8), as well as (b). *See* Mother's Brief, at 12-15. Mother's brief contains an apparent clerical error, however, in that she challenges the termination of "Mr. F.'s" parental rights under section 2511(a)(1), (5), and (8). *See* Mother's Brief, at 12, 15. We remind Mother's counsel that issues must be raised in the concise statement and the statement of questions involved portion of the brief on appeal in order to be preserved for review. *See Krebs*, 893 A.2d at 797.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those

grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

With regard to section 2511(a)(2), Mother asserts that she continues to struggle with an addiction to illegal drugs and alcohol, and a lack of stable housing. She contends, however, that she continues to seek treatment for these issues, and has had the opportunity to return to the home of child's maternal grandmother during the times when she is unable to support herself independently. Mother's Brief, at 14.

In its opinion, the trial court stated as follows:

> Applying the law summarized above to the facts of this case, we found that statutory grounds for termination of Mother's parental rights had been established by clear and convincing evidence, and further, that termination of her rights best served the needs and welfare of L.C. Prompted by Mother's appeal, we have again carefully reviewed the record and remain convinced that our decision is supported by both the facts and the law, and, moreover, fulfilled and advanced the best interests of L.C.
>
> CYS has been involved with Mother for over 20 months. While [M]other has visited and at one short-lived stage of the proceedings progressed to the point where L.C. could be placed back with her in another family member's home, overall Mother has consistently demonstrated a lack of capacity to perform parental duties for L.C. - especially when L.C. is in her care. Moreover, despite the provision of services by CYS, Mother has demonstrated an inability to remedy the conditions which caused L.C. to be placed or to satisfy service plan goals. Specifically, Mother has been unable to abstain from using drugs, has been unable to maintain or complete necessary drug and alcohol and mental health counseling, and has been unable to obtain and maintain either suitable housing or employment. Sadly and significantly, Mother was not even able to attend the TPR hearing. Besides a weekly visit at the Agency, foster parents and most recently Maternal Aunt and Uncle, not Mother, have

provided nurturing and care for L.C. and have insured that her physical, mental, emotional, medical, developmental, and daily needs have been met. Given the facts and circumstances of this case and the time that L.C. has been in care, there is no reasonable likelihood that Mother will within any acceptable time period be able to summon the ability to parent, to alleviate the circumstances that caused L.C. to come into care, or to provide for L.C. Under these circumstances and the evidence presented at hearing, it was clear to us that CYS had established grounds for termination of Mother's parental rights to L.C. under subsections 2511(a)(1), (2), (5), and (8).

Trial Court Opinion, 12/20/16, at 22-23.

Termination is warranted pursuant to subsection (a)(2), as Mother clearly lacks parental capacity, and the evidence showed that she will be unable to remedy that situation within a reasonable period of time, if ever. As there is competent evidence in the record that supports the trial court's findings and credibility determinations, we find no abuse of the trial court's discretion in finding that Mother's parental rights should be terminated under section 2511(a)(2). *In re Adoption of S.P.*, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and

child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791.

***In re: T.S.M.***, 620 Pa. 602, 628-629, 71 A.3d 251, 267 (2013).

When evaluating a parental bond, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation. ***In re Z.P.,*** 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." ***In re K.Z.S.***, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

> . . . concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d 753, 763-764 (Pa. Super. 2008) (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests, and any bond with the mother would be fairly attenuated when the child was separated from her, almost constantly, for four years).

With regard to section 2511(b), Mother argues that, at the time CYS filed the petition to terminate her parental rights, she had previously been employed, and secured new employment. Mother's Brief, at 16. Mother also asserts that she had re-engaged in drug and alcohol treatment with Dr. Levinson, as evidenced by her current prescription for Suboxone, and had signed the necessary releases to have CYS follow up on her efforts. *Id.* Mother also alleges that there is no indication in the record that Mother was not welcome in the home of Child's maternal grandmother at any time she was unable to maintain independent housing. *Id.* Finally, Mother contends that she has made consistent efforts toward reunification despite her relapse, and that it would not serve Child's best interests to sever the bond between Child and Mother. *Id.*

The trial court found as follows with regard to section 2511(b):

> With respect to the bond effects and needs and welfare
> analyses required by Sections 2511(a)(8) and (b) and applicable

case law, it was just as clear to us that the best interests and welfare of L.C. required that Mother's parental rights be terminated. At the TPR hearing, Mother's attorney expressed that Mother, although not in attendance, did not want to give up parental rights. Mother's only interactions with L.C. in the last ten months have been limited to supervised office visits. More troubling, testimony regarding one particular visit where Mother and L.C. arrived early for the scheduled visit, deduced that instead of taking advantage of addition [sic] time to interact her daughter, Mother chose to leave the Agency and come back at the regularly scheduled start time.

In conducting the required bond analysis, it was clear to us that any bond which exists is one based on simple biology. Moreover, Mother's expressions of love have not been enough to prompt her to find and maintain housing, take advantage of the services provided by CYS, stop using drugs, stay in behavioral health treatment, or put herself in the position of being capable of caring for or parenting L.C. Mother has simply not demonstrated the parental capability and stability that L.C. needs.

L.C. needs and deserves permanency, stability, love, support, and parental care. Her needs have not been met by Mother. Mother's erratic living situation, employment, and drug use have allowed for only one weekly visit with L.C., while others, especially previous foster families and now her [Maternal] Aunt and Uncle, have provided parenting for L.C. Moreover, nothing in the record suggests that Mother will be able to meet L.C.'s needs in the future, especially since Mother is refusing to get consistent help for her substance abuse and mental health needs. The overwhelming evidence supports termination of her parental rights on the grounds asserted by CYS. Moreover, given the facts presented at hearing, and considering Mother's history, we found that L.C.'s life simply could not and should not be put on hold in the hopes that, at some point in the future, Mother will summon the ability to handle the responsibilities of parenting while maintaining stable and suitable housing, a job, and sobriety.

On the other hand, L.C. is doing well living with her Aunt and Uncle, who are a permanent and pre-adopt [sic] resource for L.C. They have bonded with L.C. and L.C. has bonded with them. Simply, they are providing L.C. with the love, support,

nurturing, and care on an everyday basis that Mother has been unable to provide.

Under these facts, we found that whatever bond exists between Mother and L.C. is neither as strong nor as enduring and nurturing as the bond that exists between L.C. and her Aunt and Uncle. Consistently, we found that severing parental ties with Mother would not harm L.C. mentally, emotionally, or spiritually, while breaking the bond with the Aunt and Uncle, who have stepped in to become adoptive resource would do her significant harm.

Simply, under the facts and circumstances of this case, we found that termination of Mother's parental rights would best serve the developmental, physical, and emotional needs and welfare of L.C. and promote her best interests.

Trial Court Opinion, 12/20/16, at 23-25.

We have explained that a parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. Further, this Court has stated: "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

After a careful review of the record in this matter, we find the record supports the trial court's factual findings, and the court's conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of S.P.*, 616 Pa. at 325-26, 47 A.3d at 826-27. There was sufficient, competent evidence in the record for the trial court to find the grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied. There was also sufficient, competent evidence in the record for the trial court to find that Child's best interests are served by her foster parents, and that no bond exists between Child and Mother such that Child would suffer permanent emotional harm from the termination of Mother's parental rights. We, therefore, affirm the order terminating Mother's parental rights with regard to Child under section 2511(a)(2) and (b) of the Adoption Act, and changing her permanency goal to adoption under section 6351 of the Juvenile Act.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/11/2017